FILED
2011 Jul-20  AM 09:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| J.W., a minor by and through Tammy Williams, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action Number |
| | ) | 2:10-CV-3314-AKK |
| vs. | ) | |
| | ) | |
| BIRMINGHAM BOARD OF EDUCATION, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court is Defendants Birmingham Board of Education, Craig Witherspoon, and Anthony Moss's (hereinafter, the "School Defendants") Motion to Dismiss.  Doc. 14.[1]  Plaintiffs have sued the defendants alleging improper use of pepper spray on high school students by School Resource Officers ("SROs") of the Birmingham Police Department ("BPD").  Upon consideration of the record, the submissions of the parties, and the relevant law, the court finds that the School Defendants' Motion to Dismiss is due to be **GRANTED** in part and **DENIED** in part.

## I.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,'

---

[1]Reference to a document number, "Doc. ___", refers to the number assigned to each document as it is filed in the court's record.

but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, ---U.S.---, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 1949 (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

On a motion to dismiss under Rule 12(b)(6), the court accepts all of a plaintiff's factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228,

1231 (11th Cir. 2000). However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 129 S. Ct. at 1950.

## II.  <u>STATEMENT OF FACTS</u>[2]

Plaintiffs, current and former students enrolled in Birmingham high schools, have sued defendants alleging a number of claims arising from the use of pepper spray by SROs, who are Birmingham police officers assigned to Birmingham high schools.

According to plaintiffs, the Birmingham Board of Education "is a nine-member, elected legal body 'vested with all the powers necessary or proper for the administration and management of [the Birmingham city school system].'" Doc. 25-1 ¶ 12 (citing Ala. Code § 16-11-9).  The Board "is responsible for supervising the schools in the district by establishing and enacting guiding policies." *Id*. (citation omitted).  "Defendant Craig Witherspoon is the Superintendent and Chief Executive Officer of [the Birmingham City School System];" he "is responsible for 'see[ing] that the laws relating to the schools and the rules and regulations of the city board of education are carried into effect.'" *Id*. ¶ 13 (citing Ala. Code § 16-12-3). Witherspoon "supervises all schools and all personnel" in the Birmingham city school

---

[2]These facts are taken from plaintiffs' proposed Third Amended Complaint, which is attached to their Motion to File Third Amended Complaint and Incorporated Memorandum of Law.  Doc. 25. By filing a Motion to Amend, before the court ruled on the pending Motion to Dismiss, plaintiffs have "invited" this court to review the Motion to Dismiss in light of the proposed amendments. *See Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010).  As set forth above, the court views plaintiffs' factual allegations as true; however, it does not assume the truth of conclusory statements.

system and "is responsible for the management of the schools under [the Board's] policies." *Id.* (internal citations and quotations omitted). Defendant Anthony Moss was an Assistant Principal at Carver High School at all times relevant to this action. *Id.* ¶ 155. According to plaintiffs, school policy "does not allow the use of corporal punishment as an appropriate means of discipline." *Id.*

Alabama has a compulsory school attendance law, Ala. Code § 16-28-3, which requires children between the ages of seven and seventeen to attend school. *Id.* ¶ 32. The Board and Witherspoon enforce the attendance law. *Id.* ¶ 33. In January 1996, the Board approved for BPD officers to patrol city high schools and the stationing of SROs at city schools. *Id.* ¶¶ 35, 36. "SROs are required to report to their assigned school site every day and commence routine job functions, including patrolling school grounds and engaging in school discipline." *Id.* ¶ 37. "SROs patrol school grounds and engage in school discipline with the permission of [the Board] and Witherspoon." *Id.* "SROs frequently become involved – both on their own initiative and at the request of school personnel – in minor incidents in which safety is not an issue." *Id.* ¶ 36. Plaintiffs allege that "school personnel are aware that SROs utilize police practices, such as use of Freeze +P (a pepper spray product) and physical force, while engaging in school discipline." *Id.* ¶ 38.

Plaintiffs contend that the School Defendants have "a long-standing agreement" with the BPD that SROs not only "make arrests when they witness students engaged in illegal behavior," but that they also "respond when school

personnel seek their assistance in enforcing the [Birmingham city school system's] Code of Conduct." *Id.* ¶ 40.  They contend the School Defendants are "aware that SROs often use abusive and unnecessary force against schoolchildren in the course of their duties," and the Board "authorize[s] the use of [abusive and unnecessary] force." *Id.*

A.C. Roper, Chief of Police for the BPD, has authorized Birmingham police officers, including SROs, to carry Freeze +P, a pepper spray.  *Id.* ¶ 46.  Plaintiffs quote the following from the BPD's "policy on Chemical Spray Subject Restraint: Non-deadly Use of Force, Procedure No. 113-5":

> C.   The chemical spray may be used in an arrest situation where the weapon's use offers the possibility of lessening the likelihood of physical injury to the arresting officer, citizens on the scene and/or the suspect.

> D.   The use of chemical spray is intended solely as a control device to enable the officer to carry out his or her duties in the safest, most efficient and most professional manner with the least chance of injury to either the officer or suspect.
>
>    1.   At no time will an officer unnecessarily brandish, or use chemical spray as an intimidation device unless the officer is attempting to prevent further escalation of force.
>
>    2.   Chemical spray is not[,] under any circumstances, to be used as punishment or as a coercive tool once an individual is under control and in custody.
>
>    3.   The chemical spray is not to be used by officers unless they have a reasonable belief that a crime has been committed and that the intended target committed the crime.

E.     Any time chemical spray is used for controlling an offender[,] the application of the chemical spray will end when the subject discontinues resistance or aggression.

F.     The chemical spray is best employed in one to two second bursts. The spray must be directed to the facial area of the assailant, with the bridge of the nose being the best target area.  This weapon is primarily an inflammatory agent, producing the following results:

   1.     Involuntary closing of the eyes.

   2.     Swelling of the mucous membranes, which results in shallow breathing ability.

   3.     Intense burning on sensitive parts of the body.

   . . .

H.     It should be kept in mind by all concerned that any actual contact with chemical spray to the face or sensitive skin areas will result in the officer being adversely affected by its properties.  Caution must be taken while handcuffing prisoners, placing them in automobiles, etc.  If contact is made with the actual substance, the officer shall refrain from touching his face with the contacted area until he can wash that area with warm soapy water.

III.     <u>AFTER USE PROCEDURE</u>

A.     Following the use of chemical spray the officer will ensure that the subject receives adequate decontamination as soon as practical.  The officer should supply immediate medical attention if requested by the subject.

B.     Birmingham Fire and Rescue will be called and will determine whether or not the subject needs further medical attention or hospital treatment.

D.[sic] Any time an officer uses chemical spray for subject control, the officer
      will notify the on-duty supervisor and complete a Use of Force Information and Statement Report.

6

*Id*. ¶ 59.  Plaintiffs contend the language of this policy

> permits and encourages BPD officers, including SROs, to recklessly
> deploy chemical weapons against individuals, including children, in
> inappropriate situations and allows officers to respond
> disproportionately to student misbehavior.  In effect, it authorizes and
> directs BPD officers, including SROs, to deploy chemical agents in an
> unreasonable and unconstitutional manner.

*Id*. ¶ 61.  Moreover, they contend that the School Defendants "are aware that SROs

routinely use Freeze +P against students in the course of school discipline and arrests,

even when the targeted child poses no risk of injury to other children, to the officer,

to school personnel, or to herself."  *Id*. ¶ 68.

"Under BPD policy, any officer who uses a chemical weapon must notify the

on-duty supervisor and complete a Use of Force Information and Statement Report."

*Id*. ¶ 69.  "These reports are subject to regular review by high-level BPD officials to

ensure conformity with departmental policy, practice, and custom.  Any use of force

must also be noted in the officer's report of the incident."  *Id*.  Therefore, plaintiffs

allege "Roper is aware of the abusive practices [of SROs] given that they are reflected

in the officers' Use of Force Information and Statement Reports and officer reports."

*Id*.  Plaintiffs contend the Board and Witherspoon were aware of abusive use of

pepper spray by SROs based on "media coverage" and complaint from parents.  *Id*.

¶ 72.

Plaintiffs' complaints against defendant Moss arise from a confrontation with

plaintiff T.A.P.  *See id*. ¶¶ 153-167, 216, 223.  Plaintiffs allege:

153.  At all relevant times, T.A.P. was 5 feet, 4 inches tall and weighed approximately 145 pounds.  T.A.P. attended Carver High School from 2007 to 2009.

154.  Defendant Tarrant is a male SRO. He has a muscular build, stands approximately five feet, six inches in height, and weighs approximately 200 pounds.

155.  Defendant Moss is an assistant principal at Carver High School.  He has a stocky build, stands approximately six feet, two inches in height, and weighs approximately 280 pounds.  . . .

156.  On or around August 31, 2009, T.A.P. entered a classroom to begin her third-block class.  As T.A.P. walked in, a substitute teacher approached her, accused her of smoking cigarettes, and sent her to the school's main office to see Assistant Principal Moss.

157.  Outside of the main office, Assistant Principal Moss accused T.A.P. of smelling like cigarette smoke.  T.A.P. explained that she had smoked a cigarette before school started and off of school grounds.  Moss disregarded T.A.P.'s explanation and ordered her to call her mother to arrange to leave school.  In an attempt to comply, T.A.P. took out her cell phone and began to dial her mother.  Even though he had told T.A.P. to call her mother, Moss attempted to take the cell phone away from her.  When T.A.P. refused to give him the cell phone, he became visibly angry and told her that she could leave.

158.  Assuming that he meant she could go home, T.A.P. followed Moss down the school hallway and outside of the school.  As they reached the door, Moss opened the door and motioned for T.A.P. to exit ahead of him.  As T.A.P. walked out of the door, Moss grabbed her from behind and tripped her.  T.A.P. fell onto the concrete, stomach-first.  Moss then dug his foot into her back as she lay on the ground.

159.  T.A.P. heard a student call out "Damn, you didn't have to do it like that."  After hearing the student, Moss removed his foot from T.A.P.'s back.

160.  When T.A.P. stood up, she noticed Officer Tarrant standing close by. T.A.P. bent to pick up her backpack from the ground and slung it over her shoulder.  As she slung the backpack, the backpack

accidentally bumped Tarrant in the chest. T.A.P. then saw Tarrant reach for his belt. Because she did not know what he was reaching for, T.A.P. panicked and ran.

161.   Tarrant caught T.A.P. after she ran approximately seven feet. He grabbed her from behind and threw her down into some bushes on the lawn.

162. When T.A.P. looked up, she saw Moss and Tarrant standing above her. Moss grabbed her right arm, while Tarrant grabbed her left arm. Several seconds later, three other men – all unknown to T.A.P. – approached and held her legs down. T.A.P. was frightened being restrained by five men, and began to squirm under their grasp. However, she did not break free from their hold nor did she utter any threats to any of the men.

163.   As T.A.P. was pinned to the ground, restrained by five grown men, Tarrant said: "You wanna act hard? Let's see how you act when you get this." Tarrant then removed his canister of Freeze +P from his belt and sprayed a blast into T.A.P.'s face and eyes without warning. T.A.P. felt intense pain on her face and in her eyes, had difficulty breathing, and was blinded. Tarrant then flipped T.A.P. onto her stomach, handcuffed her, and took her to one of the school's administrative offices.

. . .

165.   Tarrant eventually escorted T.A.P. to Cooper Green Hospital, but it was too late to provide any effective treatment or pain relief, and T.A.P. was asked to sign a medical release waiver. Tarrant then escorted T.A.P. to the Jefferson County Family Court. T.A.P. continued to wear the contaminated clothing until she was released to her mother, Barbara Pettaway, at around 5:00 p.m. that evening.

. . .

167.   As a direct and proximate result of the actions of Defendants Tarrant and Moss, T.A.P. suffered emotional, psychological, and physical injuries. T.A.P. experienced swelling in the face and eyes for 24 hours, blindness for more than five hours, severe burning of the eyes and face, and difficulty breathing. The skin around her eyes was

damaged and peeling for a week after she was sprayed.  The actions of
Defendants Tarrant and Moss were major factors in T.A.P.'s decision
not to return to school.  T.A.P. continues to experience a deep distrust
of the school and law enforcement staff at Carver High School.

*Id*. ¶¶ 153-67.

Plaintiffs filed their Complaint on December 1, 2010.  Doc. 1.  They filed an

Amended Complaint ("First Amended Complaint") on January 7, 2011, (doc. 8), and,

on February 14, 2011, they filed a Motion to Amend and a Second Amended

Complaint, (docs. 19, 20).[3]  The School Defendants filed a Motion to Dismiss the

First Amended Complaint on January 21, 2011, (doc. 14), and it is this motion this

opinion addresses.

### III.  DISCUSSION

### A. OFFICIAL CAPACITY CLAIMS AGAINST WITHERSPOON AND MOSS

Plaintiffs concede that the claims asserted against Witherspoon and Moss in

their official capacities are due to be dismissed.  *See* doc. 21 at 2 n.2.  Therefore, the

court will dismiss the claims against them in the their official capacities.

### B.  PUNITIVE DAMAGE CLAIMS

Plaintiffs also concede their claims for punitive damages asserted against the

School Defendants.  *See* doc. 21 at 2 n.2.  Therefore, the court will dismiss the claims

for punitive damages against the School Defendants.

---

[3]Plaintiffs filed a Motion to File a Third Amended Complaint on May 3, 2011.  Doc. 25.

## C.  "PERSON" UNDER § 1983

The School Defendants contend, "The plaintiffs' claims for damages under 42 U.S.C. §1983 against the Board . . . fail to state claims upon which relief can be granted because state agencies . . . are not persons subject to suit for damages under §1983."  Doc. 14 ¶ 14; *see also id*. ¶ 17.  They contend that the Board is a ***state*** agency, and, therefore, is not subject to suit under 42 U.S.C. § 1983.  Doc. 15 at 12 (citing, *inter alia*, *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) and quoting *Ex parte Hale Cnty. Bd. of Educ.*, 14 So. 3d 844, 846 (Ala. 2009)).

Although the Supreme Court "has construed the word 'person' in § 1983 to exclude States," *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 376 (1990), the Court has made clear that "municipal corporations and similar governmental entities are 'persons'" subject to liability under § 1983.  *Id*. (citing, *inter alia*, *Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1977)).  Indeed, the Eleventh Circuit and the old Fifth Circuit have "rejected claims by local boards of education . . . that they are entitled to Eleventh Amendment protection."  *Stewart v. Baldwin Cnty. Bd. of Educ.*, 908 F.2d 1499, 1510 n.6 (11th Cir. 1990)(citing *Travelers Indem. Co. v. Sch. Bd. of Dade Cnty.*, 666 F.2d 505 (11th Cir. 1982); *Moore v. Tangipahoa Parish Sch. Bd.*, 594 F.2d 489, 493-94 (5th Cir. 1979); *Campbell v. Gadsden County Dist. Sch. Bd.*, 534 F.2d 650, 655-56 (5th Cir. 1976); *Adams v. Rankin Cnty. Bd. of Educ.*, 524 F.2d 928, 929 (5th Cir. 1975)); *see also Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1187 (M.D. Ala. 1999)(citing

*Monell v. Dept. of Social Servs.*, 436 U.S. 658, 689 (1978)) ("Local governmental bodies such as school boards . . . are persons within the meaning of section 1983 and can be held accountable for deprivations of federally protected rights.").

The School Defendants' arguments to the contrary have no legal support.  In fact, the cases they cite hold ***only*** that a school board is entitled to state-tort immunity. *See Hutt*, 454 So. 2d at 974 n.2 (municipal board of education enjoys immunity from state tort claims (citing *Enterprise City Bd. of Educ. v. Miller*, 348 So. 2d at 783, 784 (Ala. 1977) and *Jackson v. City of Florence*, 320 So. 2d 68 (1975))).  Such claims are separate and distinct from § 1983 claims for which school boards have no immunity. Indeed, although not binding on this court, the Alabama Supreme Court has held that a local board of education "is . . . ***not*** an arm of the State for the purposes of § 1983 liability."  *Ex parte Madison Cnty. Bd. of Educ.*, 1 So. 3d 980, 989-90 (Ala. 2008) (emphasis added).

The court finds that the Board is a "person" subject to suit under § 1983, and, accordingly, **DENIES** the motion to dismiss the § 1983 claims against it.

## D.  CLAIMS BASED ON A CONSTITUTIONAL DUTY TO PROTECT

In Counts II and V of the Amended Complaint, plaintiffs allege that the Board "has created a custodial environment with the [Birmingham] high schools for all students subject to the compulsory school attendance law," and, "As a result of the custodial environment in [Birmingham high schools], Defendant [Board] has a constitutional duty under the Fourteenth Amendment to protect . . . high school

12

students from being injured by third parties while the students are on school property for the purpose of obtaining an education."  Doc. 25-1 ¶¶ 191-92.  The School Defendants disagree and move for dismissal because "there is no constitutional right to such protection."  Doc. 14 ¶ 13; *see also id.* ¶¶ 3, 6.

In this Circuit, "schoolchildren are not in a custodial relationship with the state," and "school attendance laws [do] not restrain personal liberty in a way that place[s] an affirmative duty on the school to provide for the student's safety and general well-being."  *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1378 (11th Cir. 2002)(citing and quoting *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997)(quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)))(internal quotations omitted).  This court is bound to follow this prior ruling of the Eleventh Circuit.  *See Magwood v. Jones*, 472 F. Supp. 2d 1333, 1343 (M.D. Ala. 2007)("[I]f a circuit court has conclusively ruled on a question of law, a district court [in that circuit], may not consider arguments by a litigant that would require the district court to ignore, or rule in a manner that would undermine, the circuit court's prior ruling." (citing *McGinley v. Houston*, 361 F.3d 1328, 1329-32 (11th Cir. 2004))).  Therefore, to the extent that Counts II and V are based on a constitutional duty to protect schoolchildren arising from a custodial relationship, the motion to dismiss is due to be **GRANTED**.[4]

---

[4]The court notes, "If there is no custodial relationship, an official is liable under the substantive due process clause only if the official engages in conduct that is arbitrary or conscience shocking in a constitutional sense or amounts to deliberate indifference."  *Hall v. Freeman*, 293 F.

## E.  CONSPIRACY

In Counts III and VI of the Amended Complaint, the plaintiffs allege a conspiracy between the police and school officials to administer school discipline and conduct arrests pursuant to unconstitutional policies and practices.  The School Defendants contend, "The allegations of conspiracy between police officials and school officials fail to establish the requisite basis for a conspiracy, therefore the claims for declaratory and injunctive relief arising from such alleged conspiracy are due to be dismissed," and "The plaintiffs' claims against the Board and Dr. Witherspoon for alleged conspiracy to violate the plaintiffs' rights fail to allege facts sufficient to establish a conspiracy."  Doc. 14 ¶¶ 10, 16.

"In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984)(citing *Ostrer v. Aronwald*, 567 F.2d 551 (2d Cir. 1977); *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259 (5th Cir. 1976); *Black v. United States*, 534 F.2d 524 (2d Cir. 1976); *Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975)).  Indeed,

> "the linchpin for conspiracy is agreement . . . ." *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied* 506 U.S. 832 (1992).  "For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy . . . ." *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992) (citing *Fullman v. Graddick*, 739 F.2d

App'x. 675, 678 (11th Cir. 2008)(internal citations and quotations omitted)(unpublished).

553, 556-57 (11th Cir. 1984)).  Merely conclusory, vague, and general
allegations of conspiracy are not sufficient.  *See Fullman*, 739 F.2d at
556-57.  "'[C]ourts insist that plaintiffs state with specificity the facts
supporting an allegation of conspiracy in order to control frivolous
conspiracy suits under § 1983.'"  *Novak v. Cobb County-Kennestone
Hosp. Authority*, 849 F. Supp. 1559, 1578 (N.D. Ga. 1994)(quoting
*Schlosser v. Coleman*, 818 F. Supp. 1534, 1537 (M.D. Fla. 1993)).
Thus, to state a § 1983 conspiracy claim, plaintiff must establish the
supporting, operative facts of the conspiracy. *Phillips v. Mashburn*, 746
F.2d 782, 785 (11th Cir. 1984).

. . .  A complaint containing conclusory, vague, and general
allegations of conspiracy will be dismissed as insufficient.  *Kearson v.
Southern Bell Telephone & Telegraph Co.*, 763 F.2d 405, 407 (11th Cir.
1985); *see also Fullman*, 739 F.2d at 557 ("A complaint may justifiably
be dismissed because of the conclusory, vague and general nature of the
allegations of conspiracy.").

*Robert v. Abbett*, No. 3:08-CV-329-WKW (WO), 2009 WL 902488, at *19-20 (M.D.

Ala. Mar. 31, 2009).

"To establish a prima facie case of conspiracy under 42 U.S.C. § 1983, the

plaintiff must allege, among other things, that the defendants 'reached an

understanding to violate his rights.'" *Albra v. City of Fort Lauderdale*, 232 F. App'x.

885, 890-91 (11th Cir. 2007)(quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d

1271, 1283 (11th Cir. 2002)).   A plaintiff "must make factual allegations of

combination, agreement, or understanding among all or between any of the

defendants or co-conspirators to plot, plan, or conspire together to carry out the

alleged chain of events." *Thomas v. Pichardo*, No. 08-22333-CIV-LENARD, 2010

WL 3119623, *8 (S.D. Fla. June 2, 2010)(quoting *Ammlung v. City of Chester*, 494

F.2d 811, 814 (3d Cir. 1974))(internal quotations omitted).  As one court put it,

> "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  To the contrary, Plaintiff must show that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982).  This requires facts suggesting a "meeting of the minds." *Startzell v. City of Philadelphia, Pennsylvania*, 533 F.3d 183, 205 (3d Cir. 2008)(quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).

*Prince v. Aiellos*, No. 09-5429 (JLL), 2010 WL 5392724, *5 (D.N.J. Dec. 22, 2010).

Plaintiffs allege that the Board approved police officers and SROs to patrol schools and engage in discipline, doc. 25-1 ¶¶ 35, 37, and that the Board, Witherspoon, the BPD, and the SROs have a "long-standing agreement . . . that SROs are expected not only to make arrests when they witness students engaged in illegal behavior, but also to respond when school personnel seek their assistance in enforcing the . . . Code of Conduct," *id*. ¶ 40.  Plaintiffs allege further that "all Defendants are . . . aware that the SROs often use abusive and unnecessary force against schoolchildren in the course of their duties, and Defendants Roper[, Chief of Birmingham Police Department,] and [the Board] authorize the use of such force," (*id*.), and that the School Defendants "are aware that SROs routinely use Freeze +P [pepper spray] against students in the course of school the discipline and arrests." *Id*. ¶ 68.  Based on these facts, plaintiffs allege:

> Defendant Roper and [the Board] willfully and maliciously conspired among themselves to deprive [plaintiffs] of their rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  As

provided above, [the Board] invited [the Police Department] . . . into [Birmingham schools] to administer school discipline and conduct school arrests pursuant to unconstitutional policies, customs, and practices.  Pursuant to this agreement, [the Board] has effectively authorized and continues to authorize the illegal deployment of chemical spray against school children.

*Id.* ¶ 196; *see also id.* ¶ 213.

The court finds that these allegations do not allege an ***agreement*** between the Board and/or Witherspoon and the BPD and/or the SROs to violate the rights of the plaintiffs and other students in Birmingham high schools.  While plaintiffs aver repeatedly that the Board and/or Witherspoon "invited" or "authorized" SROs in Birmingham high schools and that they were "aware" of the SROs excessive use of pepper spray against students, these facts do not, however, suggest that the BPD and/or Chief Roper and/or the SROs plotted or planned with the Board and/or Witherspoon for the purpose of violating the constitutional rights of Birmingham high school students through the excessive and unwarranted use of pepper spray. Moreover, that the Board and/or Witherspoon had knowledge of excessive or unwarranted use of pepper spray by SROs against high school students does not show that the parties had a purposeful agreement to violate the constitutional rights of students.  *See Rowe*, 279 F.3d at 1285.  Where, as here, there is no evidence that the School Defendants reached an agreement to violate plaintiffs' constitutional rights, the conspiracy claim fails.

The School Defendants' motion to dismiss Counts III and VI is due to be **GRANTED**. Because the court finds that plaintiffs' conspiracy and failure-to-protect claims are due to be dismissed, the court pretermits discussion of the School Defendants' other grounds for dismissal.

## F.  CLAIMS AGAINST DEFENDANT MOSS

### 1.  Excessive Force

The School Defendants have moved to dismiss the excessive force claims against Moss.  In their Amended Complaint, plaintiffs allege:

> 205.  By deploying a chemical weapon against Plaintiff T.A.P. without justification, Defendant Tarrant violated T.A.P.'s clearly established constitutional rights under the Fourth and Fourteenth Amendments.[5]  The deployment of Freeze +P against Plaintiff T.A.P. was unjustified at its inception, given that T.A.P. was pinned to the ground by five adult men and posed no threat to the safety of others. This seizure was calculated to punish, humiliate, and intimidate T.A.P., as evidenced by Defendant Tarrant's taunting words prior to deploying the chemical in her face.  His actions were not reasonably related to the circumstances justifying the interference.   Accordingly, Defendant Tarrant's actions constitute an excessively intrusive seizure in violation of the Fourth and Fourteenth Amendments of the United States Constitution.
>
> . . .

---

[5]The court notes, "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  Therefore, "all claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id*. at 395.

207.  By the forgoing actions and inactions, Defendants Roper, Nevitt, Clark, Henderson, Smith, *Moss*, Tarrant, and Benson are liable pursuant to 42 U.S.C. § 1983 for *sanctioning, enforcing, and implementing a policy, practice and custom of unreasonably and unconstitutionally subjecting BCS students*, including Plaintiffs J.W., G.S., P.S., T.L.P., B.D., K.B., T.A.P, and B.J., *to excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution*.  *See* paragraphs 46, 69, 70, 72-74, 80-82, 96-98, 114, 127, 146, 158-163, and 172-174.  Because Defendants Roper, Nevitt, Clark, Henderson, Smith, Moss, Tarrant, and Benson acted in clear violation of well-established law, of which a reasonable person would have been aware, they are not entitled to qualified immunity.  The actions of these Defendants were intentional, malicious, reckless, and showed a callous disregard for the rights of Plaintiffs J.W., G.S., P.S., T.L.P., B.D., K.B., T.A.P, and B.J.

Doc. 25-1 ¶¶ 205-07 (footnote and emphasis added).

To support their claim against Moss, in addition to the facts related to Moss's confrontation with T.A.P. on August 31, 2009, plaintiffs refer to a number of paragraphs that allegedly show Moss's conduct as it relates to other plaintiffs.  *See* doc. 25-1 ¶ 207 (listing paragraphs).[6]  However, except for the incident involving Moss and T.A.P. described in  paragraphs 153-163, these paragraphs have nothing to do with Moss.  Paragraph 46 states that ***Roper*** "authorize[d] and require[d] BPD officers to carry Freeze +P."  Doc. 25-1 ¶ 46.  Paragraphs 69 and 80-82 allege that ***Roper*** was aware of the use of pepper spray because of the BPD policy requiring officers to complete a "Use of Force Information and Statement Report" when they used pepper spray and ***Roper*** took no action to stop or control the use of pepper spray

---

[6]Specifically, plaintiffs cite paragraphs 46, 69, 70, 72-74, 80-82, 96-98, 114, 127, 146, 158-163, and 172-174.

on school children.  *Id*. ¶¶ 69, 80-82.  Paragraph 70 alleges that ***Roper*** failed to take

any action despite knowing that SROs "routinely use Freeze +P against school

children."  *Id*. ¶ 70.  Paragraphs 72-74 state that the ***Board*** and ***Witherspoon*** were

"well aware of the policy, practices, and customs" of the SROs use of pepper spray

and that the ***Board*** and ***Witherspoon*** knew that plaintiffs' counsel had requested

documents showing SROs use of pepper spray from Jefferson County Family Court.

*Id*. ¶¶ 72-74.  Finally, while the remaining paragraphs plaintiffs cite allege facts

related to the use of pepper spray against plaintiffs other than T.A.P, *id.* ¶¶ 96-98

(plaintiff G.S.), ¶ 114 (plaintiff T.L.P.), ¶ 127 (plaintiff B.D.), ¶ 146 (plaintiff K.B.),

and ¶¶ 172-74 (plaintiff B.J.), none of these paragraphs, however, contained any

allegation regarding or reference to Moss.  In other words, to the extent that plaintiffs

maintain Moss used excessive force against plaintiffs other than T.A.P., they failed

to plead that alleged conduct.

As to the conduct that plaintiffs did plead, however, despite plaintiffs' assertion

that Moss participated in the incident involving T.A.P., in which Moss allegedly

grabbed and tripped T.A.P., dug his foot into her back to keep her on the ground, held

her down, and did nothing to stop the official after Tarrant told a restrained T.A.P.:

"You wanna act hard?  Let's see how you act when you get this?", Doc.25-1 ¶¶ 158-

163, and their reliance on this incident, in part, to support their excessive force claim,

the School Defendants contend nonetheless that plaintiffs have failed to sufficiently

plead an excessive force claim.  Specifically, the School Defendants contend: "The

plaintiffs' claim against defendant Anthony Moss for alleged use of excessive force fails to state a claim for relief that is plausible on its face or that raises the possibility of relief above the mere speculative level;" "The plaintiffs' claim against defendant Anthony Moss for alleged use of excessive force fails to plead sufficient facts against Mr. Moss to support a reasonable inference that the defendant is liable for the alleged misconduct." Doc. 14 ¶¶ 11-12. The court disagrees. Moss is an educator to whom parents entrust their children daily during the school year. In addition to educating the children, parents expect that Moss will do all he can to provide a safe learning environment for their children. While educators certainly cannot protect students from all harm, at a minimum, parents expect educators to refrain from grabbing and tripping a child they are charged with protecting or from restraining a child and then standing by when an officer sprays the child with pepper spray, especially where, as here, the allegations are that the child was simply exiting the building as instructed by the educator in question.

Although he is not a member of the BPD, these facts are sufficient to establish that, as to T.A.P., Moss was in a position to sanction, enforce, and/or implement any policy of police use of force in general or the use of pepper spray specifically. Likewise, the court finds that plaintiffs' Amended Complaint has "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" against Moss for excessive force in violation of T.A.P.'s Fourth Amendment rights. *See Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). Therefore, the

School Defendants' motion to dismiss Count IV against Moss will be **DENIED** as it relates to T.A.P.  However, as it relates to the other plaintiffs, the motion is due to be **GRANTED** since plaintiffs have presented no facts to support their contention that Moss sanctioned, enforced, or implemented any policy to use excessive force as it relates to them.

### 2.  Excessive Corporal Punishment

Plaintiffs claim –

> By illegally assaulting Plaintiff T.A.P. in direct violation of [Birmingham school] policy prohibiting corporal punishment and by holding T.A.P. down as Defendant Tarrant sprayed her in the face with mace, Defendant Moss violated Plaintiff T.A.P.'s right to be free from excessive corporal punishment as provided by the Fourteenth Amendment of the United States Constitution.  Defendant Moss unreasonably and unjustifiably assaulted Plaintiff T.A.P., intentionally caused her to fall to the ground, and planted his foot in her back when she posed no threat to anyone.  Defendant Moss also aided Defendant Tarrant in subjecting T.A.P. to unreasonable and abusive physical abuse. Defendant Moss'[s] actions were obviously excessive and presented a reasonably foreseeable risk of serious bodily injury to Plaintiff T.A.P. Accordingly, Defendant Moss'[s] use of corporal punishment amounts to arbitrary and egregious conduct in violation of the Fourteenth Amendment to the United States Constitution.

Doc. 25-1 ¶ 216.  The School Defendants contend, "The plaintiffs' claim against defendant Anthony Moss for damages for alleged excessive corporal punishment fail to allege any facts upon which defendant Moss could be held liable," and, "The plaintiffs' factual allegations against defendant Anthony Moss for excessive corporal punishment could support, at most, a state law tort claim and the plaintiffs' claim for

a constitutional violation arising from alleged excessive corporal punishment must therefore be dismissed." Doc. 14 ¶¶ 18-19.

In this Circuit, "excessive corporal punishment . . . may be actionable under the Due Process Clause when it is tantamount to arbitrary, egregious, and conscience-shocking behavior." *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir. 2000). "[A]t a minimum, the plaintiff must allege facts demonstrating that (1) a school official intentionally used an amount of force that was obviously excessive under the circumstances, and (2) the force used presented a reasonably foreseeable risk of serious bodily injury." *Id.*; *see also D.D. ex rel. Davis v. Chilton Cnty. Bd. of Educ.*, 701 F. Supp. 2d 1236, 1241 (M.D. Ala. 2010)("The court explained that to reach the constitutional standard, a plaintiff must show that the school official intentionally used an amount of force that was obviously excessive and that the force presented a reasonably foreseeable risk of serious bodily injury." (citing *Peterson v. Baker*, 504 F.3d 1331, 1337 (11th Cir. 2007))).

T.A.P.'s allegations are the quintessential "conscience-shocking behavior" that rises to a constitutional claim. Specifically, plaintiffs allege that Moss grabbed and tripped T.A.P., that she fell on her stomach on concrete, and that, after she fell, Moss "dug his foot into her back." Doc. 25-1 ¶ 158. They also allege that after SRO Tarrant grabbed and threw T.A.P. down from behind, she looked up and saw Moss and SRO Tarrant standing over her and that, allegedly, Moss helped to restrain her while Tarrant pepper-sprayed her. *Id.* ¶¶ 162-63.

While the court is aware that "the kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim for excessive corporal punishment," *see Neal*, 229 F.3d at 1076, allegedly tripping a student and restraining her while she is pepper sprayed exceeds "traditional corporal punishment." Moreover, unlike the plaintiff in *Peterson v. Baker*, 504 F.3d 1331 (11th Cir. 2007), T.A.P. "points to . . . evidence that medical care was administered [and] that permanent marks remained on [her] body." 504 F.3d at 1337; *see also Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904-05 (11th Cir. 2003)(cause of action stated against principal who struck a thirteen-year-old student repeatedly with a metal cane, including hitting him in the head); *Neal*, 229 F.3d at 1076 (cause of action stated when plaintiff alleged a coach "hit [him] in the eye with a metal weight, causing severe injury," including permanent loss of the use of his eye).

Because the plaintiffs have alleged facts that support their allegation that Moss's conduct, as it relates to T.A.P., posed a reasonably foreseeable risk of serious bodily injury, the motion to dismiss the excessive corporal punishment claim against Moss will be **DENIED**.

### 3.  Assault and battery

Plaintiffs allege:

> Defendant Moss intentionally tripped T.A.P., causing her to fall to the ground, and ground his foot [in her] back.  Defendant Moss also held T.A.P. to the ground as Defendant Tarrant sprayed her in the face

24

with chemical spray.  These actions amount a tort of assault of battery against T.A.P. in violation of Alabama law.  Defendant Moss' actions were intended to physically harm Plaintiff T.A.P. and caused her to fear imminent bodily harm.

Doc. 25-1 ¶ 223.  Defendants contend, "The plaintiffs' claim against defendant Anthony Moss for assault and battery fails to allege sufficient facts from which Mr. Moss could be held liable for assault and battery."  Doc. 14 ¶ 20.

In Alabama, "[t]o be guilty of an assault and battery, the teacher must not only inflict on the child immoderate chastisement, but he must do so with legal malice *or* wicked motives *or* he must inflict some permanent injury."  *Suits v. Glover*, 71 So. 2d 49, 50 (Ala. 1954)(internal quotations omitted; emphasis added); *see also Deal By and Through Barber v. Hill*, 619 So. 2d 1347, 1349 (Ala. 1993) (same, quoting *Suits*); *Hinson v. Holt*, 776 So. 2d 804, 810-11 (Ala. Civ. App. 1998).  "[A] showing of legal malice on the part of an educator with respect to the infliction of corporal punishment will not only defeat the privilege enunciated in *Suits* – it will also overcome any substantive immunity arising from the performance of a discretionary function." *Hinson*, 776 So. 2d at 811-12.  "Legal malice may be defined as 'the intentional doing of a wrongful act without just cause or excuse, either with an intent to injure the other party or under such circumstances that the law will imply an evil intent.'"  *Id*. at 812 (quoting *Empiregas, Inc. v. Feely*, 524 So. 2d 626, 628 (Ala. 1988)).  "[M]alice is generally a fact issue; 'the existence of malice being a fact which in the nature of things is incapable of positive, direct proof, it must of necessity be rested on

25

inferences and deductions from facts' that can be presented to the trier of fact." *Id*.

(quoting *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 140 (Ala. 1983)).

Plaintiffs' Amended Complaint contains sufficient factual allegations that

support a plausible claim for assault and battery against Moss. *See* doc. 25-1 ¶¶ 157-

158 (alleging that Moss tripped T.A.P without cause or excuse and at a time when she

was complying with his instructions). Accordingly, the motion to dismiss Count VIII

will be **DENIED**.

### 4. Outrage

Plaintiffs allege:

> 233. By sanctioning, approving, and authorizing the illegal and unconstitutional use of chemical weapons by Defendants Nevitt, Clark, Smith, Henderson, Moss, Tarrant, and Benson against Plaintiffs G.S., T.L.P., B.D., K.B., T.A.P, and B.J., Defendant Roper engaged in extreme and outrageous conduct in violation of Alabama law. As a result of Defendant Roper's policy, practices, and deficient training program with regard to the use of chemical weapons in BCS, these Plaintiffs suffered physical and emotional distress that no reasonable child could be expected to endure.

> 234. Defendants Roper, Nevitt, Clark, Smith, Henderson, Moss, Tarrant, and Benson are liable pursuant to Alabama law for sanctioning, enforcing, and implementing policies, customs, and practices that subject BCS students, including Plaintiffs G.S., T.L.P., B.D., K.B., T.A.P., and B.J., to extreme and intentional emotional distress in violation of Alabama law. Defendants Roper, Nevitt, Clark, Smith, Henderson, Moss, Tarrant, and Benson acted willfully, maliciously, and with a callous disregard or indifference to the rights of Plaintiffs G.S., T.L.P., B.D., K.B., T.A.P, and B.J. *See* paragraphs 46, 69, 70, 72-74, 80-82, 96-98, 114, 127, 146, 158-163, and 172-174. Because Defendants Roper, Nevitt, Clark, Smith, Henderson, Moss, Tarrant, and Benson acted willfully and maliciously, they are not entitled to discretionary function immunity provided by Alabama law.

Doc. 25-1 ¶¶ 233-234.

"The tort of outrage is a very limited cause of action that is available only in the most egregious circumstances." *Leatherwood v. Mobile Hous. Bd.*, No. 09-00410-CB-N, 2010 WL 3039598, at *6-7 (S.D. Ala. 2010) (internal citations and quotations marks omitted). The Alabama Supreme Court has recognized outrage claims in regard to only three kinds of conduct: "(1) wrongful conduct in the family-burial context, (2) barbaric methods employed to coerce an insurance settlement, and (3) egregious sexual harassment." *Potts v. Hayes*, 771 So. 2d 462,465 (internal citations omitted). Nonetheless, as the Supreme Court more recently explained:

> That is not to say, however, that the tort of outrage is viable in only the three circumstances noted in *Potts*. Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. . . . It is clear, however, that the tort of outrage is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*Little v. Robinson*, --- So. 3d ---, No. 1090428, 2011 WL 1334416, at *4 (Ala. April 8, 2011) (internal quotation marks and citation omitted). Defendants, however, contend, "The plaintiffs' claim against defendant Anthony Moss for the tort of outrage must be dismissed because the alleged conduct of the defendant is not within any of the three categories of claims for which the Alabama Supreme Court has permitted outrage claims." Doc. 14 ¶ 22. The court disagrees that the tort-of-outrage

27

claim is cognizable only in the circumstances outlined in *Potts*.  Instead, consistent

with *Little*, the court declines, at this juncture, to decide that the use of pepper spray

on a minor entrusted in one's care can never rise to a cognizable claim for outrage.

Therefore, the motion to dismiss Count IX against Moss is **DENIED**.

## G.  REPLEADING

The court will **GRANT** plaintiffs' Third Motion to Amend, (doc. 25), and

allow plaintiffs an opportunity to replead.  However, their Third Amended Complaint

shall contain no more than one claim against one defendant per count.  *See* Fed. R.

Civ. P. 10(b).  For example, Count IV alleges a claim of excessive force by Moss and

each police defendant against each plaintiff.  Doc. 25-1 ¶¶ 199-208.  However, each

alleged use of pepper spray against the students did not involve all defendants.  Rule

10(b) requires that "A party must state its claims or defenses in numbered paragraphs,

each limited as far as practicable to a single set of circumstances.  . . .  If doing so

would promote clarity, each claim founded on a separate transaction or occurrence

. . . must be stated in a separate count . . . ."  Fed. R. Civ. P. 10(b).  In this case,

without doubt, clarity would be promoted by limiting each count to a "single set of

circumstances."  *Id*.

Therefore, plaintiffs' Third Amended Complaint must, to the extent practicable,

limit each claim found on a specific incident of the use of pepper spray to a separate

count.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that the Motion to Dismiss, filed by the School Defendants, (doc. 14), is due to be **DENIED** as to all claims except plaintiffs' (1) official capacity claims against Witherspoon and Moss;(2) punitive damages claims; (3) constitutional duty to protect based on a custodial relationship claim (Counts II and V); (4) conspiracy claim (Counts III and VI); and (5) excessive force claims against Moss by all plaintiffs except T.A.P.  The court will enter contemporaneously with this Memorandum Opinion its Order granting in part and denying in part the School Defendants' motion to dismiss.

**DONE** this 20th day of July, 2011.


_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE